**IN THE UNITED STATES BANKRUPTCY COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| GARY LAMAR MILLER | ) | Case No.: 04-10816 |
| PEGGY HARDWICK MILLER | ) | |
| Debtors. | ) | |

**TRUSTEE'S MOTION FOR APPROVAL OF PROPOSED COMPROMISE SETTLEMENT OF DISPUTE REGARDING THE SECURED STATUS OF COMPETING CREDITORS**

*PURSUANT TO LRB 9007-1, THIS MOTION WILL BE TAKEN UNDER ADVISEMENT BY THE COURT AND MAY BE GRANTED UNLESS A PARTY IN INTEREST FILES A RESPONSE WITHIN 20 DAYS OF THE DATE OF SERVICE. RESPONSES MUST BE FILED WITH THE CLERK AND SERVED UPON THE MOVING PARTY. RESPONSES MUST BE FILED ELECTRONICALLY WITH THE CLERK OR BY U.S. MAIL ADDRESSED TO THE CLERK OF THE BANKRUPTCY COURT, P.O. BOX 1248, MONTGOMERY, ALABAMA 36102.*

William C. Carn, III, the duly appointed and acting trustee in the above styled Chapter 7 case, moves the court for approval of a compromise settlement involving the disputed claims of two creditors to a secured position in assets of the bankruptcy estate. The terms of the proposed compromise, and the grounds for this motion, are as follows:

**The Parties in Interest**

1. The undersigned was appointed as trustee in this case on April 16, 2004 (See Docket Entry No. 4), and continues to serve in that capacity.

2. The Citizens Bank of Geneva, Geneva, Alabama ("Citizens") is a creditor asserting that its claim is due to be allowed as a secured.

3. The Internal Revenue Service ("IRS") is the holder of a secured claim that is junior to the claim of Citizens, should the Citizens claim be determined by final order to be secured, and/or a priority unsecured claim.

**The Procedural Posture of This Proceeding**

4. Citizens filed the following claim:

    Claim No. 5, Secured, $123,468.91.

5. IRS filed the following claim:

    Claim No. 2, Secured, $212,298.42

6. Trustee filed an objection to the Citizens claim and moved to reclassify the claim as a general unsecured claim (See Docket Entry No. 31).

7. Citizens objected to the trustee's motion to reclassify its claim, asserting that its claim was properly due to be allowed as secured (See Docket Entry No. 32). By Memorandum Opinion (See Docket Entry No. 56) and Order (See Docket Entry No. 57) dated September 30, 2005, the objection of Citizens was overruled, and its claim reclassified to general unsecured status.

8. Citizens filed a Motion to Alter, Amend or Vacate the order overruling its objection to the trustee's motion to reclassify (See Docket Entry No. 60). By order dated November 7, 2005, this court overruled the foregoing motion (See Docket Entry No. 67).

9. Citizens filed Notice of Appeal to the United States District Court for the Middle District of Alabama (See Docket Entry No. 73). The appeal is docketed, and on motion by the trustee and Citizens, the District Court has entered an order enlarging by ninety (90) days the time for filing briefs in order to permit the parties to present the compromise set forth in this motion to the Bankruptcy Court.

10. Citizens also filed a Motion for Relief from the Automatic Stay, requesting that it be permitted to pursue a fraudulent transfer action in the Circuit Court of Geneva County (See Docket Entry No. 66). This motion was granted by order of this court entered on December 16, 2005 (See Docket Entry No. 88).

## Summary of the Material facts

11. The material facts are set forth in a Joint Stipulation of Undisputed Facts filed by Citizens and the trustee in his case (See Docket Entry No. 49). In the interest of convenience, pertinent portions of the joint stipulation are set forth below:

*1. On March 17, 1976, C.M. Hardwick passed away owning, among other items of property, a house and lot in Panama City, Florida ("beach house") and approximately six hundred acres of land in Geneva County, Alabama ("land").*

*2. Mr. Hardwick's entire Estate, including the beach house and land, passed to his surviving spouse, Dorothy Hardwick pursuant to his Last Will and Testament.*

*3. Dorothy and C.M. Hardwick had four daughters, Joy H. Outlaw, Debtor Peggy H. Miller, Jill Hardwick and Sara Dyess.*

*4. On March 8, 1984, Dorothy Hardwick conveyed the beach house to her four daughters. By virtue of this conveyance, Peggy Miller acquired a one-fourth undivided interest in the beach house.*

*5. On March 4, 1989, Dorothy Hardwick passed away. Pursuant to her Last Will and Testament, the four daughters acquired all of Mrs. Hardwick's remaining assets, including the Six Hundred acres of land in Geneva County.*

*6. On March 9, 2000, The Citizens Bank filed suit against Gary Lamar Miller and Peggy Hardwick Miller in their individual capacities in the Circuit Court of Geneva County, Alabama (CV-2000-025).*

*7. On November 3, 2000, the four daughters transferred the land to Hardwick Farms, L.L.C., an Alabama limited liability company, by virtue of a warranty deed. This deed was recorded in the probate office of Geneva County, Alabama on*

*November 6, 2000. Peggy Miller owned a 25% uncertificated membership interest in the L.L.C. This membership interest was not dealt in or traded in securities exchanges or in securities markets; has not been designated a "security" within the meaning of Ala. Code § 7-8-103; nor has the L.L.C. been registered as an investment company pursuant to Federal investment company laws.*

*8.     Although a deed transferring the beach house to Hardwick Farms, LLC was executed by the four daughters on or about November 3, 2000, that deed was never recorded in Bay County, Florida.*

*9.     On February 22, 2001, judgment was entered in CV-2000-025 against both Gary and Peggy Miller in the sum of $209,548.64, plus 8.5% interest.*

*10.    On April 20, 2001, The Citizen's Bank recorded its judgment in the office of the Judge of Probate in Geneva County. The Citizens Bank did not domesticate its judgment against Peggy Miller in the State of Florida nor record it with the Probate Court of the Bay County, Florida where the property is located.*

*11.    On May 11, 2001, The Citizens Bank filed a writ of execution in the Circuit Court of Geneva County in case number CV-2000-025.*

*12.    On May 23, 2001, the Geneva County Sheriff returned the writ of execution to which he attached a sheet listing two parcels of real property and four vehicles and their lienholders. As shown by the case action summary from CV-2000-025, no further action has been taken in state court on this case after the Sheriff's return on execution dated May 23, 2001.*

*13.    On March 28, 2002, The Citizens Bank filed a complaint in the Circuit Court of Geneva County against Peggy and Gary Miller, Hardwick Farms, L.L.C. and MOC, Inc.*

*14.    On April 15, 2004, the Millers filed a voluntary chapter seven bankruptcy petition in the United States Bankruptcy Court of the Middle District of Alabama and William C. Carn, III was appointed Trustee.*

*15.    On April 30, 2004, the Circuit Court of Geneva County entered an order staying the execution suit as to Defendants Gary Miller and Peggy Miller. Prior to April 30, 2004, the Circuit Court had entered no judgment in connection with the Complaint filed in Cv-02-38-M.*

*16.    On November 8, 2004, The Citizens Bank filed its proof of claim in the bankruptcy proceeding listing the debt owed by the Millers as a secured debt.*
*17.    On January 28, 2005, the Trustee filed a motion seeking to either strike or reclassify the claim as a general unsecured claim.*

*18.    On February 7, 2005, The Citizens Bank filed an objection to the Trustee's motion.*

## Summary of the Legal Issues

*12.    The parties briefed the various issues in this matter extensively. The court likewise wrote comprehensive opinions in support of each of its rulings. For purposes of this motion, however, the legal issues may be summarized as follows:*

      A.    At the time the Citizens state court judgment was recorded, the undivided one-fourth interest of debtor Peggy Miller in the Geneva County real estate had been transferred by warranty deed to a Hardwick Farms L.L.C., an Alabama limited liability company (the "LLC") in which Peggy Miller retained a 25% interest. The legal issues are whether Ms. Miller wrongfully transferred the property to the LLC in an attempt to place it beyond the reach of her known creditor(s), so that under Alabama law the recorded lien still attached to the fraudulently conveyed property; (b) whether under Alabama law this known creditor who had a lawsuit pending at the time of the conveyance has a legal right to have the allegedly fraudulent conveyance set aside and the property made available for satisfaction of its judgment; (c) whether the recorded judgment constitutes a lien against Ms. Millers 25% membership interest in the LLC; and (d) whether the financial rights of a member of a limited liability company is property which is subject to levy and execution under Alabama law. The Bankruptcy Court has ruled against Citizens, but the matter is on appeal to the District Court, and the District Court's ruling is subject to appeal to the Eleventh Circuit Court of Appeals.

      B.    Citizens has also received permission to return to state court in order to pursue a fraudulent conveyance action against the LLC. Subject to the provisions of the automatic stay of Section 362 insofar as the bankruptcy estate is concerned, Citizens has indicated an intention to attempt to avoid the transfer of the Geneva County property to the LLC, and attempt to create a situation where its judgment lien might be deemed to attach to the real property.

### The Proposed Compromise

13.    Citizens has proposed that its claim be bifurcated, and that the first $85,000 be treated as secured, with the balance to be treated as a general unsecured claim.

14. For the reasons set forth below, the trustee believes that such a compromise is in the best interests of the bankruptcy estate, subject to the position to be taken by IRS. In an effort to promote a settlement of this matter, trustee has adopted the Citizens proposal and now submits it for consideration by the court, the IRS and all parties-in-interest.

### Justification for the Compromise

15.    Trustee proposes this compromise as being in the best interests of the bankruptcy estate based upon the need to avoid further legal expense. One of the duties of the trustee is to review claims, and insure that claims are properly filed, properly allowed, and properly administered. In this particular case, given the complexity of the facts and the legal issues, the expense to the estate to continue with the litigation of this matter is potentially very significant.

16.    The claims of Citizens and the IRS constitute approximately 92.8% of the total amount of the claims filed in this case.

17.    If some accommodation can be reached between the IRS and Citizens regarding treatment of their respective claims, and litigation expense ended, the funds

available for distribution will be greater for all concerned.

      18.    In the event this matter remains on appeal to the District Court, and from there is appealed to the Eleventh Circuit, it is conceivable that another 2-3 years could elapse before this case is ready for final application. As there will also be tax returns involved in the case for the trustee, once assets are actually administered, additional delay once all appeals are exhausted will also be encountered.

      19.    The assets in this case are quite significant, leading to the possibility of a very high dividend to creditors that might conceivably reach 100%. To continue to incur litigation expense and delay, for possibly several more years, will diminish the possibility of an effective administration.

*/William C. Carn, III*
William C. Carn, III, Trustee
Lee & McInish, P.C.
P.O. Box 1665
Dothan, AL  36302
(334) 792-4156
Fax:  (334) 794-8342

### Certificate of Service

      I hereby certify that I have served a copy of the foregoing Motion for Approval of Proposed Compromise Settlement of Dispute Regarding the Secured Status of Competing Creditors upon the U.S. Bankruptcy Administrator, Collier H. Espy, Patricia Conover, Derek Yarbrough and all other creditors listed on debtors' petition by placing a copy of the same in the U.S. Mail postage pre-paid and properly addressed on this the 15th day of March, 2006.

*/William C. Carn, III*
Of Counsel